CLEMENT A. EVANS & CO., Inc.,
Plaintiff-Appellant,

v.

William J. McALPINE, Jr. et al.,
Defendants-Appellees.

No. 28326.

United States Court of ·Appeals,
Fifth Circuit.

Nov. 5, 1970.

Rehearing Denied Dec. 9, 1970.

Hugh M. Dorsey, Jr., J. Clifton Barlow, Jr., Atlanta, Ga., for plaintiff-appellant; Hansell, Post, Brandon & Dorsey, Atlanta, Ga., of counsel.

Claude E. Hambrick, Atlanta, Ga., for Edward M. Garrett.

Hoke Smith, Atlanta, Ga., for A. ·M. Kidder & Company, Inc.; Smith, Cohen, Ringel, Kohler, Martin & Lowe, Atlanta, Ga., of counsel.

William J. McAlpine, Jr., pro se.

Before BELL, SIMPSON and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

This appeal arises from a civil action for damages brought by plaintiff/appellant, Clement A. Evans & Co., Inc., a stock brokerage firm [hereinafter referred to as Evans & Co.], against the defendants, William J. McAlpine, Jr., Edward M. Garrett and A. M. Kidder & Co., Inc., another stock brokerage firm [hereinafter referred to as Kidder & Co.].

Plaintiff's complaint alleged violation by the defendants of § 10(b) of the Securities Exchange Act of 1934, 15 U.S. C.A. §§ 78a et seq., 78(j)[1] and Commission Rule 10B-5, 17 C.F.R. § 240.10b-5 (1970)[2], promulgated thereunder.[3]

From a jury verdict and judgment for the defendants, the plaintiff appeals, urging as error the court's charge to the jury, failure to charge on a tendered instruction and an adverse evidential ruling.

The facts surrounding the alleged fraud, while not in dispute, involved a complex scheme whereby the defendants are purported to have created a facade of financial responsibility for the defendant McAlpine, thereby allowing him to trade a large volume of securities with the plaintiff Evans & Co., the net result being that Evans & Co. sustained a claimed loss of $308,133.95 due to five of McAlpine's checks, issued in payment for securities, being dishonored for insufficient funds.

While no useful purpose would be served in reviewing the details of each transaction which transpired, a succinct summary of the pertinent facts is appropriate for clearly delimiting the issues presented for appellate review.

McAlpine's dealings with Garrett, Kidder & Co. and Evans & Co. began in the spring of 1961. McAlpine, in order to expand his business interests and discharge his financial obligations, obtained bank loans upon the execution of personal trust receipts, which trust receipts were secured, in part, by securities pledged as collateral. A number of the securities so pledged were not then owned by McAlpine, and when the bank requested confirmation of McAlpine's ownership, McAlpine referred the bank to Garrett, the registered representative and agent for Kidder & Co., for verification. The evidence revealed that Garrett did verify McAlpine's ownership although McAlpine did not in fact own the securities. When the bank requested that the

1. § 78j(b) "Manipulative and deceptive devices.

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
　　*　　*　　*　　*　　*

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.　*　*　*"

2. § 240.10b-5 "Employment of manipulative and deceptive devices.

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud.

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

3. The plaintiff's complaint did not allege, nor does it seek to recover under the common law remedy for fraud and deceit, which remedy was pursued separately in the state courts of Georgia. See A. M. Kidder & Co., Inc. v. Clement A. Evans & Co., Inc., 117 Ga.App. 346, 160 S.E.2d 869 (1968).

securities in question be liquidated and the proceeds therefrom be applied to reduce the loan balance in McAlpine's account, Garrett purchased the securities through Kidder & Co. with that company's funds and sold them the following day. The proceeds from that transaction were paid to the bank in favor of McAlpine's account. In order for McAlpine to reimburse Garrett and Kidder & Co. for the securities so purchased and applied to his account, he obtained additional bank loans and again pledged as collateral securities which he did not own. In this manner, McAlpine was able to mirror an image of financial responsibility and solvency while the evidence indicates that the contrary was true.

Emboldened by his initial success, McAlpine began trading a significant volume of securities through the plaintiff, Evans & Co. The transactions, while complex to the neophyte investor, primarily took the form of daily "buy and sell" transactions. McAlpine would "sell" a particular security through Evans & Co.—a security which he did not own. By the time delivery was required of the stock so sold, McAlpine had obtained the stock through Kidder & Co. in negotiable form and merely gave in exchange therefor a signed receipt. When the stock was delivered to Evans & Co., McAlpine received a check representing the proceeds of the sale.

Concurrent with his sale of securities, McAlpine would consummate the "buy" portion of the transaction—purchasing securities from Evans & Co., and giving his personal check in payment therefor. The evidence upon trial revealed that over a three to four month period, McAlpine had checks to Evans & Co. dishonored for insufficient funds; yet despite this situation, which, in the terms of one of plaintiff's employees, was "explosive", Evans & Co. continued to transact business with McAlpine and accept his personal checks when normally such irregularities required the customer's trading account to be "frozen" for a period of 90 days.[4] It is the last five of McAlpine's checks which were returned to plaintiff for insufficient funds that comprise the $308,133.95 for which the plaintiff here seeks recovery.

Against this evidentiary backdrop the trial court instructed the jury in pertinent part as follows:

"Now, the defendants also contend that the plaintiff did not exercise reasonable diligence to discover the existence of the alleged fraud. In that connection, I charge you that it is impossible to lay down any general rule as to the amount of evidence or number or nature of evidential facts admitting discovery of fraud. But, facts in the sense of indisputable proof or any proof at all, are different from facts calculated to excite inquiry which impose a duty of reasonable diligence and which, if pursued, would disclose the fraud. Facts calculated to excite inquiry merely constitute objects of direct experience and, as such, may comprise rumors or vague charges if of sufficient substance to arouse suspicion. Thus, the duty of reasonable diligence is an obligation imposed by law solely under the peculiar circumstances of each case, including existence of a fiduciary relationship, concealment of the fraud, opportunity to detect it, position in the industry, sophistication and expertise in the financial community, and knowledge of related proceedings.

"If you find from the evidence in this case that the plaintiff had knowledge of facts sufficient to excite its inquiry, and that the peculiar circumstances of this case were sufficient to impose upon the plaintiff a duty of reasonable diligence, and that the plaintiff failed to exercise this duty, then you should return a verdict for the defendants."

It is the above quoted excerpt of the court's charge which the plaintiff objects to and which constitutes the focal point of our review.

---

4. Federal Reserve Board Regulation T, 12 C.F.R. § 220.4(c)· (8) (1970).

Initially, plaintiff maintains that this private civil action for fraud based upon the Federal Securities Laws does not require application of the Georgia substantive law of fraud under the *Erie* doctrine as jurisdiction is not founded upon diversity of citizenship, but rather arises under a federal statute. With this proposition we are quite in accord. However, we do not stamp with judicial imprimatur plaintiff's further assertion that reasonable diligence on its part is not a duty imposed by law in a 10b–5 civil action for damages. The predicate for this further proposition is that Georgia law requires a showing of "due diligence" on behalf of the plaintiff in protecting himself from fraud before civil liability will attach. Therefore, plaintiff argues, this not being a diversity case, due diligence is not a duty imposed upon plaintiff in the instant case. This argument, while cogent on its surface, lacks foundational support. Although the issue of due or reasonable diligence on the part of a private plaintiff in a civil action for fraud under § 10b–5 has not been frequently raised and, as a result, the precise issue is without precedent in this circuit; several decisions from other circuits have proved instructive.

Entering as we do a relatively unexplored area in the thicket of § 10b–5 litigation, we are mindful of the caveat sounded earlier by another panel of this Court that, "In this area especially, * * a case-by-case approach is necessary to the proper development of controlling precedent." Herpich v. Wallace, 430 F. 2d 792 (5th Cir. 1970). Moreover, solutions in this area are not obtained by application of abstract rules, but rather must be formulated from the particular facts and circumstances of each case within the context of the principles and policy of the statute and the rule. See, e.g., Kohler v. Kohler, 319 F.2d 634 (7th Cir. 1963).

Perhaps the most cogent analysis of the standards to be applied in both private damage actions and suits for injunctive relief under Rule 10b–5 is found in City National Bank of Fort Smith, Ark. v. Vanderboom, 422 F.2d 221 (8th Cir. 1970), cert. denied, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560. The court in *Vanderboom* adopted and expanded upon a two-step test earlier fashioned by the Second Circuit in Heit v. Weitzen, 402 F.2d 909 (2nd Cir. 1968), cert. denied, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969).

"We think this two-step test breaks down as follows: (1) With regard to misrepresentations, the question is whether a reasonable investor, in light of the facts existing at the time of the misrepresentation *and in the exercise of due care,* would have been entitled to rely upon the misrepresentation. With regard to nondisclosures, the issue becomes whether a reasonable investor, in light of the facts existing at the time of the nondisclosure and in the exercise of due care, would have been entitled to receive full disclosure from the party charged and would have acted differently had the alleged nondisclosure not occurred. (2) If the plaintiff satisfies this 'in connection with' step, it then becomes necessary to determine whether the defendant's misrepresentation or nondisclosure was made with scienter or from a lack of due diligence. See SEC v. Texas Gulf Sulphur Co., 401 F.2d 833 at 863 (2 Cir.)"

422 F.2d at 230 (emphasis supplied).

In a footnote reference to the above quoted excerpt, the court quotes a commentator expressing the view that:

"Not only should the plaintiff have to prove that he relied on the defendant's statements, but he must convince the trier of fact that his reliance was reasonable under all the circumstances at the time. In this way recovery would be denied to those who, because of their 'business sophistication,' acumen, or ready access to the information involved, could reasonably be expected to exercise a higher degree of care and investigation in their dealings."

And in reflecting upon that statement the *Vanderboom* court indicated that:

"We feel that step one of our test properly reflects these considerations as the objective standard of a reasonable investor exercising due care in light of all facts effectively imposes a duty of reasonable investigation, thereby limiting the class of investors who will be protected under 10b–5(2) to conscientious buyers and sellers in good faith."

422 F.2d at 230, n. 10.

We are in accord with the views expressed therein. While the commentator quoted by the court couched his language in the context of negligent misrepresentations, we are of the view that plaintiff's duty above espoused is not altered merely because the misrepresentations are alleged to be intentional rather than negligent. Surely plaintiff would not contend that a purchaser or seller could justifiably rely on a fraudulent misrepresentation, no matter how willfully and intentionally made, if that misrepresentation would tax even the most credulous mind.

We are cognizant, of course, that our views have a limiting effect upon the class of investors who may recover in a Rule 10b–5 action for damages. But such limitation is consistent with the views expressed in the decisions of this and other circuits.[5]

■ Thus, as the trial court instructed the jury in the instant case, the plaintiff's sophistication, expertise and business acumen in the financial community, his access to information and opportunity to detect the fraud are all relevant considerations in determining the exercise of reasonable diligence. Kohler v. Kohler, *supra*, 319 F.2d at 641–642. See, also, Rogen v. Ilikon Corp., 361 F.2d 260 (1st Cir. 1966); Gerstle v. Gamble-Skogmo, Inc., 298 F. Supp. 66 (E.D.N.Y. 1969).

The plaintiff further asserts that the portion of the lower court's charge here complained of is not in accordance with this court's views stated in Hooper v. Mountain States Securities Corp., 282 F.2d 195 (1960). We do not agree. This court in *Hooper* rejected the defense of *in pari delicto* in a 10b–5 action as being without merit. Plaintiff's assertion that affirmative defenses, such as *in pari delicto* are thus not permitted in § 10b–5 actions, is without support as evidenced by this court's recent holding in Kuehnert v. Texstar Corp., 412 F.2d 700 (1969), in which it was stated that *in pari delicto* is a defense available in a § 10b–5 action and the doctrine's application rests in the sound discretion of the trial court.

■ We have carefully examined the record in this case, and particularly the testimony relevant to the issue before us. That examination reveals that there was substantial evidence to support a jury finding of lack of reasonable diligence on the part of the plaintiff, and finding no error in the court's charge, that verdict is final. Grumbles v. Times Herald Printing Co., 387 F.2d 593 (5th Cir. 1968), cert. denied, 390 U.S. 1028, 88 S.Ct. 1419, 20 L.Ed.2d 285.

Inasmuch as the plaintiff's request to Charge No. 27 is the converse of that portion of the court's charge here under review, which we have found free from error, its rejection by the trial court did not constitute reversible error.

■ Turning to plaintiff's third and final point of error it is contended that the trial court improperly excluded from evidence a sworn statement by the defendant McAlpine consisting of some thirty-five pages and which chronicles the transactions participated in by the defendants.

We find no abuse of discretion in the trial court's exclusion of the tendered statement. It is conceded by the plaintiff that portions of the statement were inadmissible as to the defendants Garrett and Kidder & Co., but claims that the remainder should have been admitted as an admission against interest of McAlpine, especially in view of the fact

---

5.  See Herpich v. Wallace, supra, 430 F.2d at 805, n. 12 and cases cited therein.

that plaintiff offered to mask the inadmissible portions from the jury's view.

Having again reviewed the record in detail, it is observed that counsel for the plaintiff conducted thorough and searching cross-examination of the defendant McAlpine eliciting from him the substance, and at times, verbatim, the contents of his sworn statement. Thus, while the subject matter may have been legally relevant, its logical relevance after cross-examination was justifiably suspect in that the detailed transactions in the statement were already before the jury. Moreover, McAlpine was furnished a copy of the statement during cross-examination and opposing counsel made frequent and extensive reference to it. We fail to observe any prejudice to the plaintiff from the trial court's ruling.

Accordingly, and in light of the foregoing, the judgment of the district court is affirmed.