**H. C. COLVIN, O. M. Prigmore, et al.,**
**Plaintiffs-Appellants,**

v.

**DEMPSEY–TEGELER & CO., INC., et al.,**
**Defendants-Appellees.**

No. 72–2243.

United States Court of Appeals,
Fifth Circuit.

April 20, 1973.

Rehearing and Rehearing En Banc
Denied June 12, 1973.

Sam Rosen, Kleber C. Miller, Fort Worth, Tex., for plaintiffs-appellants.

Dean Shuman, Lubbock, Tex., for Bass.

Allen Butler, Barefoot Sanders, William L. Keller, Dallas, Tex., for Dempsey-Tegler and Harold Levitt.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

Between December 19, 1968, and April 16, 1969, the eight plaintiffs purchased

a total of 7,900 shares of Erie Technological Products, Inc. stock through the Lubbock, Texas, office of Dempsey-Tegeler & Company, Inc., a broker-dealer in securities. The market price of this stock subsequently dropped substantially and most of the 7,900 shares were sold at a considerable loss. The plaintiffs thereafter brought this suit against Dempsey-Tegeler and three of its employees, claiming that the misrepresentation of certain material facts and the omission of others had caused the purchase of the stock, which in turn resulted in plaintiffs' damages.[1]

After a trial before a jury and after receiving its answers to a complicated series of fact questions, the district court entered judgment for the defendants. Pursuing on appeal only two of their original four substantive theories,[2] plaintiffs contend that the answers to the questions propounded to the jury dictate a finding of liability under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5, and under the Texas Securities Act, article 581–33, subd. A(2), V.A.T.S. In the alternative they argue that the jury's answers are irreconcilable and thus require a new trial in full or in part. Because we are of the opinion that the jury's answers with respect to each of the plaintiffs are totally irreconcilable, we reverse and remand for a new trial.

■ The fact that this judgment was entered upon the jury's answers to a series of questions from the court under Fed.R.Civ.P. 49(a) imposes special obligations on us as an appellate court. These requirements were recently dis-cussed by this court in Griffin v. Matherne, 5 Cir. 1973, 471 F.2d 911.

The Seventh Amendment requires that if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly. Atlantic & Gulf Stevedores v. Ellerman Lines, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 806–807 (1962). This court has stated that the test to be applied in reconciling apparent conflicts between the jury's answers is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict. R. B. Company v. Aetna Insurance Company, 299 F.2d 753, 760 (5th Cir. 1962). If on review of the district court's judgment we find that there is no view of the case which makes the jury's answers consistent and that the inconsistency is such that the special verdict will support neither the judgment entered below nor any other judgment, then the judgment must be reversed and the cause remanded for trial anew. Missouri Pacific Ry. Co. v. Salazar, 254 F.2d 847, 849 (5th Cir. 1958); Wright v. Kroeger Corporation, 422 F.2d 176, 178–179 (5th Cir. 1970).

471 F.2d at 915. Because none of the jury's answers in this case specifically mentioned either of the securities acts now in question, it is incumbent upon us to consider separately how the questions as a whole relate to each act.

1. The misrepresentations and omissions alleged in the complaint concerned a proposed tender offer by International Systems Corporation (ISC) to purchase the outstanding Erie Technological stock at a price well above the prevailing per share market price. This information, which was not otherwise fully disclosed to the investing public, was alleged to have come to the individual defendants from the president of ISC.

2. The plaintiffs had also sought relief under section 12(2) of the Securities Act of 1933, 15 U.S.C.A. § 77l(2), and under the Texas common law of negligence. No error is raised with respect to the judgment on either of these theories and we need not consider them further.

## I. Securities Exchange Act

Rule 10b–5 of the Securities and Exchange Commission, promulgated under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b), establishes, indirectly,[3] private liability for certain proscribed acts done "in connection with the purchase or sale of any security." If the other stated conditions are satisfied, the Rule makes it unlawful:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. . . .

The plaintiffs initially sought recovery under each facet of each clause in the Rule, but on appeal are claiming only under clauses (b) and (c).[4]

## A. Misrepresentations

 The first possible avenue of recovery under clause (b) of Rule 10b–5 is based upon misrepresentations of material facts. Questions to the jury numbers 1, 2, and 3 and their subparts are addressed to this point, with each question referring to a different individual defendant. Question 3 identifies the problem in this area.

The answers to 3(a) show that defendant Levitt made material misrepresentations in connection with each plaintiff's purchase, the responses to 3(b) establish that these misrepresentations caused each plaintiff to purchase shares of Erie Technological, and the answers to 3(d) show that these misrepresentations were made by Levitt with knowledge of their falsity or from a lack of due diligence.[5] The irreconcilable feature of the jury's answers, however, stems from the wording of and answers to Questions 3(c), 20, and 6A. Question 3(c) asks:

Do you find from a preponderance of the evidence that, in the light of the facts and circumstances existing at the time of the misrepresentations,

3. *See* Hooper v. Mountain States Securities Corp., 5 Cir. 1960, 282 F.2d 195, cert. denied, 1961, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693; Reed v. Riddle Airlines, 5 Cir. 1959, 266 F.2d 314.

4. The jury found that none of the defendants had "employed any device, scheme or artifice to defraud." The correctness of this finding is not questioned on appeal.

5. Question No. 3
 (a) Do you find from a preponderance of the evidence that in connection with the purchase by any of the Plaintiffs of the shares of the stock of Erie Technological Products, Inc. the Defendant Harold E. Levitt made any untrue statement or misrepresentation of a material fact?
 Answer: ("Yes" as to each plaintiff).
 (b) Do you find from a preponderance of the evidence that such untrue statement or misrepresentation made by Defendant Harold E. Levitt in answer to Question 3(a) above, caused any of the Plaintiffs to purchase shares of Erie Technological Products, Inc.?
 Answer: ("Yes" as to each plaintiff).
 (d) Do you find from a preponderance of the evidence that the misrepresentations made were made by the Defendant Harold E. Levitt with knowledge on his part that same contained misrepresentations or untrue material facts or from a lack of due diligence in connection with the sale of the Erie stock to the Plaintiffs?
 Answer: ("Yes" as to each plaintiff).
 It should be noted that the responses to Questions 1 and 2 establish that defendants Cornelius and Bass each made material misrepresentations which caused the plaintiffs to purchase Erie Technological stock, but also show that the jury concluded that neither of these defendants made the misrepresentations negligently or knowingly.

that in the exercise of due care, Plaintiffs would have been entitled to rely upon the misrepresentations?

Answer: ("Yes" as to each plaintiff). The apparent inconsistency arises when, in response to the following question, the jury stated that none of the plaintiffs was entitled to any recovery.

## Question No. 20

From a preponderance of the evidence state in dollars and cents the amount of damages, if any, incurred by each Plaintiff, as a result of such Plaintiff's purchase of the Erie stock in question.

In answering this Question No. 20 you will include in the amount of damages only those losses on the shares of Erie Technological Product, Inc. stock which were purchased by each Plaintiff because of the misrepresentations, omissions, negligence or fraudulent scheme of the Defendants and none other.

Defendants try to reconcile these answers in two ways. First, they argue that Question 20 asks the jury to determine causation, and they conclude that a $0 answer is a finding that plaintiffs suffered no damages as a result of defendants' alleged wrongdoing. However reasonable this interpretation might be when Question 20 is read separately, it fails to recognize that the answers to 3 (b) establish a causal relationship between the misrepresentations and the purchases, which would normally be enough to satisfy this aspect of a 10b–5 suit.

Secondly, they argue that 3(c) does not ask the jury to consider all of the factors that influenced the plaintiffs' decision to purchase, but instead they suggest that the question, worded conditionally and in the subjunctive, instructs the jury to *assume* due care and to ignore such factors as the plaintiffs' expertise, their sophistication in the industry, their knowledge of the stock market, and their ability to investigate the misrepresentations. As such, the defendants argue that the jury was entitled to rely upon its answers to Question 6A—which state that each plaintiff failed to exercise due care in the purchase of the stocks in question and that such failure was a proximate cause of any damages —in finding $0 damages in Question 20. We disagree.

Although the defendants' argument is one possible reconstruction of the jury's thought processes used in answering the questions asked it, it is a possibility which we are not at liberty to consider. Question 3(c) and 3(d) were derived from Clement A. Evans & Co. v. McAlpine, 5 Cir. 1970, 434 F.2d 100, 103, cert. denied, 1971, 402 U.S. 988, 91 S.Ct. 1660, 29 L.Ed.2d 153 (relying on City National Bank v. Vanderboom, 8 Cir. 1970, 422 F.2d 221, 230, cert. denied, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560), both of which cases explained the proper meaning to be given these questions.[6]

In *McAlpine* this court quoted with approval a commentator who argued that a bare showing that a plaintiff relied would not be sufficient for him to recover in the absence of a showing that the reliance was reasonable; an investor

---

**6.** The confusion which has resulted from the answers to the questions asked the jury in the case is largely attributable to two factors. First, the instructions on misrepresentations and omissions, taken straight from the legal tests adopted in *McAlpine* and not from the jury instruction upheld in that case, were probably less than perfectly clear to the average juror and, without some explanation, should not have been given in that form. Secondly, this confusion was magnified by letting the jury consider all the questions together even though some of them had only limited applicability. For example, the question on plaintiffs' contributory negligence (correct under the common law negligence claim and at least arguably relevant to the Texas Securities Act claim, *see infra*) was juxtaposed with the *McAlpine* questions on 10b–5, with respect to which it is totally irrelevant as the questions are presently worded and as they were answered.

with " 'business sophistication,' acumen, or ready access to the information involved" might then be denied recovery because he could reasonably be held to a higher standard of care and investigation. The court went on, however, to say that step one of its test (Question 3(c) here) properly reflects these considerations and does not ignore them, as the defendants here suggest. 434 F.2d at 103–104. Consequently, the only interpretation we can give the answers to 3(c) is that, even if the plaintiffs had exercised due care (in light of *all* the circumstances and considering all of their sophistication in the stock market), the jury still felt the plaintiffs would have been entitled to rely on the misrepresentations. When interpreted in this light, the fact the jury found in Question 6A that the plaintiffs' failure to exercise due care proximately caused any damages that occurred, becomes hopelessly inconsistent with 3(c). The plaintiffs' negligence could not have been a proximate cause of any purchase if, in the absence of any such negligence, the plaintiffs would still have been entitled to make the same purchases.

An additional inconsistency becomes apparent by realizing that, in the context of these interrogatories, Questions 3(a)–(d) establish a prima facie case of liability, but that, without any valid defense being found, the jury returned a verdict of $0 damages. Defendant has attempted to reconcile this conflict by citing a series of cases which stand for the proposition that a general verdict for the plaintiff in the amount of $0 does not require a new trial. Wingerter v. Maryland Casualty Co., 5 Cir. 1963, 313 F.2d 754; *see* Fairmount Glass Works v. Cub Fork Coal Co., 1933, 287

U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439; Joseph v. Rowlen, 7 Cir. 1970, 425 F.2d 1010; Association of Western Railways v. Riss & Co., 1962, 112 U.S.App.D.C. 49, 299 F.2d 133, cert. denied, 370 U.S. 916, 82 S.Ct. 1555, 8 L.Ed.2d 498. *See also* Spears v. Hough, 8 Cir. 1972, 458 F.2d 529, cert. denied, 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131.

Although we recognize the validity of this rule of law, it cannot be applied in this case. The judgment in each of the cases cited was returned in the form of a general verdict, whereas the case below involved the answers to a complicated series of specific questions asked in accordance with Fed.R.Civ.P. 49(a). One purpose of this latter procedure is to dispel a portion of the inscrutability inherent in broad general verdicts. Here, the jury's answers clearly demonstrate a misunderstanding of the precise meaning of the questions asked them and provide no basis for a $0 damages answer if the answer to 3(c) is correct.[7] In this posture, a new trial is required.

### B. Omissions

■ Our decision with respect to the second avenue of recovery under clause (b) of Rule 10b–5—omissions of material facts—exactly tracks the above discussion about misrepresentations. Questions 4, 5, and 6 and their subparts were addressed to this point, and Question 6[8] fully identifies the problem here.

The answers to 6(a) show that, with respect to each plaintiff's purchases, defendant Levitt failed to disclose certain material facts which should have been stated to prevent other information from being misleading, and the responses to 6(c) establish that these failures to disclose occurred with knowledge of the omitted information or from a lack

---

7. Although the exact damages suffered were not directly stipulated to, the value of the shares on the date of purchase and on the date of sale (or on the date of trial for the shares still held) was conceded and, in the absence of some reduced loss or shared blame for a portion of the loss, this stipulation would have precluded a $0 damages verdict if liability had been established.

8. Questions 6(a), (b), and (c) concerned possible omissions made by one defendant. This is totally separate from and should not be confused with Question 6A, which concerned any contributory negligence of the plaintiffs.

of due diligence.[9] The difficulty, however, arises from the answers to 6(b). The question read:

### Question No. 6

\* \* \* \* \* \*

(b) Do you find from a preponderance of the evidence that such Plaintiffs, in light of the facts existing at the time of the non-disclosure which you have found in Question (a) above, and in the exercise of due care, would have been caused not to purchase the shares of Erie Technological Products, Inc., if the disclosures had been made rather than withheld?

The jury's answer was "Yes" as to each plaintiff.

Because the thrust of this language also was taken from *McAlpine*, 434 F.2d at 103, the meaning of it is subject to the same interpretation as was the misrepresentation question discussed *supra*. Consequently, the answers to Question 6 generate the same irreconcilable conflict with Questions 6A and 20 as the answers to Question 3(c), and require a new trial.

### C. Act, Practice, or Course of Business

■ Questions 10, 11, and 12 asked the jury to decide whether any of the three defendants had violated clause (c) of Rule 10b–5, which essentially proscribes any act, practice, or course of business that operates as a fraud. The responses establish that each defendant engaged in such conduct in connection with each plaintiff's purchases of stock and that this conduct caused each plaintiff to purchase shares of Erie Technological.[10]

The answers to these questions, which differ from Questions 1–6 in that they were not lifted from the *McAlpine* opinion, create inconsistencies similar to those surrounding the answers to the questions concerning misrepresentations and omissions. On their face Questions 10–12 are not literally consistent with Questions 6A and 20, contributory negligence not being a defense per se to a 10b–5 action. Nevertheless, several specific activities that would constitute common-law contributory negligence could also be defenses to a private 10b–5 action for damages. *See generally McAlpine, supra.* Thus, we choose not to rely on such potential inconsistency, but

9. Question No. 6
(a) Do you find from a preponderance of the evidence that in connection with the purchase by any of the Plaintiffs of shares of the stock of Erie Technological Products, Inc. the Defendant Harold E. Levitt failed to state or reveal one or more material facts which would be necessary in order to prevent the statements which were made from being misleading, in light of the circumstances under which they were made?
Answer: ("Yes" as to each plaintiff).
(c) Do you find from a preponderance of the evidence that the failure to disclose by the Defendant Harold E. Levitt was done with his knowledge of the existence of certain material facts which he withheld or from a lack of due diligence on his part?
Answer: ("Yes" as to each plaintiff).
Questions 4 and 5 asked the jury to decide whether either Cornelius or Bass

failed to disclose any material information. It answered "No" as to each of these individual defendants and the correctness of these findings is not questioned on appeal.

10. Question No. 10 is typical of these three questions.
(a) Do you find from a preponderance of the evidence that in connection with the purchase by Plaintiffs of shares of Erie Technological Products, Inc., the Defendant Tommie Lee Cornelius engaged in any act, practice or course of business which operated as a fraud or deceit upon any of the Plaintiffs.
Answer: ("Yes" as to each plaintiff).
(b) Do you find from a preponderance of the evidence that such act, practice or course of business which operated as a fraud or deceit caused any such Plaintiff to purchase shares of Erie Technological Products, Inc.?
Answer: ("Yes" as to each plaintiff).

instead look at the basis for the finding that an illegal act, practice, or course of business was involved.

An examination of the pleadings and proof in the court below convinces us that the only foundation for finding such acts, etc. to have existed is the proof relevant to the alleged misrepresentations and omissions. As such, it is inconceivable that that proof and the jury's answers relevant thereto, could take on any character other than the fatally defective inconsistency which we have concluded surrounds Questions 3 and 6. The confusion which resulted from the technical wording of Questions 1–6 and from the inappropriate inclusion, without limiting instructions, of 6A has rendered the jury's answers on this aspect of the case wholly unreliable and irreconcilable, requiring a new trial.

### II. Texas Securities Act

■ Article 581–33, V.A.T.S., provides in pertinent part:

A. Any person who

\* \* \* \* \* \*

(2) Offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made not misleading (when the person buying the security does not know of the untruth or omission, and who in the exercise of reasonable care could not have known of the untruth or omission) is liable to the person buying the security from him. . . .

The plaintiffs claim, as they did under Rule 10b–5, that they are entitled to a judgment under the Texas Act based on the jury's answers to the questions concerning misrepresentations and omissions. Even a cursory review of the questions to the jury and its answers, however, demonstrates an almost identical irreconcilability.

Of the twenty-five questions, and their subparts, asked the jury, only the first six directly apply to misrepresentations and omissions. These were the questions whose language was drawn from the *McAlpine* opinion. Despite the fact that the questions had their source in a 10b–5 case and were drafted with that rule in mind, the jury was not asked to differentiate between the two theories of recovery and its answers to Questions 1–6 must be said to have the same meaning under the Texas Securities Act as they did under Rule 10b–5. Therefore, the jury concluded that each individual defendant made misrepresentations which caused purchases of stock, and decided that, even in the exercise of due care, the plaintiffs would have been entitled to rely on the misrepresentations. Additionally, the jury found that certain material facts, not disclosed by defendant Levitt, if disclosed, would have caused the plaintiffs not to purchase the shares if they had exercised due care.

If the remaining questions and answers were ignored, the answers to the misrepresentation and omission questions would establish a prima facie case under the Texas Securities Act, at least as against the individual defendant who acted knowingly or negligently.[11] The existence of such a prima facie case raises the spectre of irreconcilability

---

11. Although we do not decide the question, it is possible that under the Texas Act, the plaintiffs have established a prima facie case concerning misrepresentations against the other two individual defendants as well, despite the jury's finding that they did not act knowingly or negligently. *Compare* Article 581–33(A)(2), V.A.T.S., *with* Uniform Securities Act § 410(a)(2). See also 2 A. Bromberg, Securities Law: Fraud § 8.4(210) (1971); Bordwine, Civil Remedies Under the Texas Securities Laws, 8 Houst.L.Rev. 657, 674 (1971).

when compared with the jury's answer of $0 damages in Question 20.

Defendants again seek to explain the difference by noting the jury's answers to Question 6A, which state that each plaintiff failed to exercise due diligence in the purchases of his stock. This explanation is rooted in the Texas Act itself which precludes recovery if it is shown that the plaintiffs knew or reasonably could have known of the untruth or omission. Although Question 6A is not phrased in the words of the Act, it would be reasonable for us to infer that, because of the testimony offered at the trial, the jury concluded that the plaintiffs were negligent because they knew, or could have known of the untruths or omissions.[12]

Instead of resolving the conflict, however, this inference, necessary for the defendants to prevail, merely intensifies it. On the one hand the jury has said that the plaintiffs, even if careful, would have been entitled to rely on the misrepresentations and omissions, and on the other hand they might have been saying that the plaintiffs were negligent (in not finding out the truth) and that this negligence caused any damages which resulted. Regardless of whether the Texas Act has eliminated the requirement of a plaintiff's reliance on a misrepresentation or omission, we think it beyond the limits of human credibility to suggest that this jury considered it reasonable for the plaintiffs to rely on misrepresented or omitted facts which were material, but nevertheless concluded that the failure to discover the true facts caused the damages which resulted from the reliance previously considered reasonable.

With no perceptible way to reconcile these answers we conclude that a new trial on the Texas Act is required.

### III. Miscellaneous Errors

■ Plaintiffs assert that the submission of Question 25—which inquires whether the defendants acted in good faith and with no intent to defraud—was erroneous. It seems fairly clear that, while perhaps not reversible error per se, the instruction has no place in this Rule 10b–5 case. See McAlpine, supra; SEC v. Texas Gulf Sulphur Co., 2 Cir. 1968, 401 F.2d 833, 862, cert. denied, 1969, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756; Kohler v. Kohler Co., 7 Cir. 1963, 319 F.2d 634, 637. Here the jury had already been specifically asked, in Questions 1–6, whether each defendant had acted knowingly or negligently.

Under the Texas Act, Question 25 read alone could have some relevance to the punitive or exemplary damages allowed in article 581–33, subd. A(2). However, because that Act allows such damages only if a defendant acts willfully and because Questions 21–23 asked whether each defendant acted willfully, Question 25 was at best redundant. As a result, if, on remand, the jury is questioned properly about the defendants acting knowingly, with lack of due diligence, or willfully, a further inquiry into good faith or intent to defraud would be improper.

■ Defendants also have raised two points, but they merit only brief attention. First, they argue that the district court should have asked the jury to con-

---

12. By indicating that the jury could have reasonably concluded that the plaintiffs knew or could have known, we are not expressing our view that the burden of showing the nonexistence of this knowledge is on the plaintiff nor are we saying that the burden of proving plaintiff's knowledge as an affirmative defense is on the defendant. Compare 2 A. Bromberg, supra note 11 at § 8.4(220) and Comm. on Sec. & Inv. Banking of the Section on Corp., Banking and Business Law of the State Bar of Texas, Comment—1963 Amendment 1B Vernon's Texas Civ.Stat. 69 (1964) with Bordwine, supra note 11 at 661, 674. The resolution of that dispute will have to await another day.

sider whether the plaintiffs are barred from recovery because they were *in pari delicto*. Secondly, they contend that, as a matter of law, the district court did not have any personal jurisdiction over one of the defendants with respect to the Texas Act. Whatever the merits of these positions may be they are not properly before this court. Defendants filed no notice of cross-appeal as they are allowed to do under Fed.R.App.P. 4(a), and, in the absence of such an appeal, they will not be heard to question the district court's judgment in this court. *See* United States ex rel. Goetz Construction Inc. v. Yorfino, 5 Cir. 1969, 412 F.2d 329.

### IV. Scope of Remand

Because the inconsistencies in the jury's answers described above require a new trial, we must determine the scope of the new trial. In one of their alternative prayers for relief, plaintiffs request that any new trial be on the issue of damages alone. In support of this position they argue that certain interrogatories clearly establish prima facie cases against certain defendants under one or both acts. Although this may be true when the questions are viewed separately, as we have indicated several times, we are not at liberty to so fragmentize the jury's answers. We can no more be sure that the answers to Questions 3, 6, 10, 11, or 12 are the true expressions of the jury's intent than we could be sure that the answers to Questions 6A and 20 express their final decision. In fact the complex wording and technical meaning of Questions 3(c) and 6(b) make it unlikely that the jury fully comprehended their meaning.

Consequently, unable to reconcile the jury's answers and without authority under these facts to accept some answers and totally ignore others, we reverse and remand for a new trial on liability and damages.

Reversed and remanded.