**Rocco Di Leo and Angelo Di Leo, Plaintiffs-Appellees, v. United States Fidelity and Guaranty Company, a Corporation, et al., Defendants-Appellants.**

**Gen. No. 49,324.**

First District, First Division.

June 15, 1964.

Rehearing denied August 3, 1964.

Clausen, Hirsh, Miller & Gorman, of Chicago, for appellants.

George C. Rabens, of Chicago, for appellees.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

Plaintiffs, proprietors of a food store, brought suit on fire insurance policies to recover damages to the store "contents" and for "business interruption." Four of the defendants, whose policies covered the store "contents," appeal from a summary judgment order entered in favor of plaintiffs for the amount of the stipulated "content" fire loss. The trial court found there was no reason for delaying enforcement of or appeal from the judgment order.

Defendants contend that the entry of a summary judgment constitutes reversible error, since the facts well pleaded in defendants' affirmative defenses, and not traversed by plaintiffs' affidavit, presented a complete and valid defense to plaintiffs' claim. Defendants also contend that the court erred in fixing the date for the commencement of interest on the fire loss.

The building in which plaintiffs, as tenants, operated their grocery, market and food store, was a 4-story brick building situated at 1122 West Erie Street, Chicago, Illinois. Prior to the fire, the building had been condemned by the City of Chicago, and plaintiffs were awarded a judgment of $1,200 for their leasehold interest. On May 27, 1958, plaintiffs were served by the City of Chicago with a notice terminating their tenancy as of June 30, 1958. The fire occurred June 27, 1958. The seven policies were identical in printed form and general provisions. Four covered the "contents" and three covered "business interruption."

Count I of the complaint included the four "content" policies, and Count II included the three "business interruption" policies. The joint answer of the seven defendants admitted the policies but denied liability, relying upon an "increase of hazard" clause. Defendants alleged that coverage was suspended at the time of the fire because the hazard of fire was increased by "means within the control or knowledge of the insured," in that prior to the fire and because of the condemnation, most of the building, except for the store occupied by the plaintiffs, had been vacated, certain of the fixtures had been removed, and many windows in the building had been broken and not replaced.

The answer further alleged that the policies were voided by the wilful concealment and misrepresentation by plaintiffs of the facts relating to the condemnation proceedings and alleged consequences.

Plaintiffs' reply admitted the condemnation proceedings, the judgment award and notice of termination of their tenancy. They further replied that they were not informed "as to the degree of occupancy of the building . . . , the removal of certain fixtures and that many windows in the building had been broken," and denied any "increase in the hazard of loss to the

185

property insured by means within the control or knowledge of the insureds, and they further deny that as a result of any knowledge or control, the coverage of the policies sued upon hereunder was suspended at the time of the occurrence of the fire." Plaintiffs further replied that the conditions surrounding the property insured by the policies were known, or should have been known, to the defendants or their agents, and that such knowledge "constituted a waiver of such policy provision to the extent of such knowledge." Plaintiffs further denied "that any concealment was wilfully done by plaintiffs with intention to cheat and defraud said defendants and they further deny that said policies of insurance became void."

On motion of plaintiffs, Judge Arthur A. Sullivan, after "having considered all of the pleadings and the affidavit of the plaintiffs in support of the motion; and it appearing that no counteraffidavits have been presented or filed by the defendants," entered "summary judgment as to liability against the defendants and each of them."

Subsequently, plaintiffs moved for "final summary judgment" against four of the defendants: the United States Fidelity & Guaranty Company for $12,022.66; against the Home Insurance Company for $5,152.56; against the Western Fire Insurance Company for $2,576.28; and against the American Insurance Company for $2,576.28, "together with interest upon the stated amount as to each said defendant at the rate of 5% per annum from and after September 15, 1958 and until the date of judgment thereupon, and for costs of suit, including statutory attorney's fees."

In support of this motion, plaintiffs presented to the court the pleadings and a stipulation of the parties, dated February 27, 1963. The stipulation purported to show that adjusters representing plaintiffs and defendants had "orally agreed that the amount of loss

186

and damage which occurred June 27, 1958, . . . and described in the fire insurance policies previously issued by said defendants, was $22,327.78." The stipulation further provided that the entry of any judgment for $22,327.78 "shall not affect in any way the rights of said defendants or of plaintiffs on any appeal therefrom, including the validity or correctness of the summary judgment as to liability entered herein against said defendants on July 16, 1962."

After considering the pleadings, the summary judgment as to liability, the stipulation of the parties, the briefs submitted by counsel relative to the allowance of statutory interest, and the arguments of counsel, Judge Joseph J. Drucker entered a judgment order on May 20, 1963, in which the court found that the plaintiffs were entitled to recover damages from the four respective defendants in the amounts previously set forth, "together with and including interest against each at the rate of 5% per annum from the date of the filing of the answer of the defendants in this cause, July 25, 1959, to the date hereof." The court further found that the plaintiffs were not entitled to attorney's fees.

█ We believe the determinative question here presented is whether there is a "triable issue of fact." In a summary judgment proceeding, the right of the moving party should be free from doubt. If, upon an examination of the pleadings, depositions, and affidavits, it can be fairly said that a material dispute exists as to the facts, a motion for summary judgment should be denied. On the other hand, where the record shows there is no triable issue of fact, a summary judgment will be granted. Tuohey v. Yellow Cab Co., 33 Ill App2d 180, 183, 180 NE2d 691 (1962).

We are concerned with the following policy provisions:

"CONDITIONS SUSPENDING OR RESTRICTING INSURANCE.

"Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring:

"(a) while the hazard is increased by any means within the control or knowledge of the insured;
. . ."

"CONCEALMENT, FRAUD.

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

Defendants argue that the clause "within the control or knowledge of the insured" should be construed in the "alternative." Cited are several cases which refer to statutory language in which the disjunctive conjunction "or," as used in its ordinary sense, "marks an alternative indicating that the various members of the sentence which it connects are to be taken separately." (People v. Vraniak, 5 Ill2d 384, 389, 125 NE2d 513 (1955).) Defendants further point out that "since this precise question treating with the application of the increase of hazard clause has never been decided by the Illinois courts, it is necessary to look to the decisions of other states for guidance and a sense of direction." Defendants rely, for example, on Patriotic Ins. Co. of America v. Franciscus, 55 F2d 844 (8th Cir 1932), which involved an "increase of hazard" clause, where an alcoholic distilling plant was found in the rooms of insured's burned premises. The court found that the still had increased the hazard, and the only question was whether the lessor

188

[the insured] was accountable for the hazard increase by a tenant, without the insured's knowledge. The court instructed the jury that the policy would be void only if it was found that the still was put in and operated "either within the knowledge or within the control of Mr. Franciscus [the lessor]; that he had knowledge of it, or that it was within his power to have, under the circumstances, controlled it, prevented it, or stopped it."

In that case, we note there was obvious control—the control of the landlord over the premises. The question in many cases examined is whether, having control, the insured can be charged with knowledge, the converse of the question here. In other words, once control is shown, there remains a question, usually for the jury, of whether there was knowledge, but these cases cannot be said to stand for the proposition that knowledge alone suffices to make the clause "control or knowledge" operative.

However, Appleman, Insurance Law and Practice, Vol 5, § 2941, at page 5, refers to the cases on point and summarized:

> "However, they [the cases] have held that to avoid a fire policy, the increased hazard must take place within the insured's knowledge AND control, . . ."

In Couch on Insurance 2d, § 37:698, the section "Knowledge or Control of Insured" begins with the statement:

> "In order to affect the policy of insurance, an increase of risk must be from a cause over which the insured has control. Thus, applying the rule that the condition has reference only to the insured premises or to property under the control of the insured, it is held that an increase in risk resulting from conditions on adjacent premises

189

over which the insured has no control will not avoid a policy of insurance, . . ."

See, also, "Insurance of Commercial Real Estate," Wylie H. Davis, 1957 Illinois Law Forum, at pages 586, 612, and "Increase-of-Hazard Clause in the Standard Fire Insurance Policy," 76 Harvard L Review, 1472, 1475 (n 23), where the authors conclude that courts have typically read the phrase conjunctively to mean knowledge AND control.

Several cases have been cited which contain language supporting plaintiffs' view that control of the premises must be shown. In St. Paul Fire & Marine Ins. Co. v. Bachmann, 285 US 112 (1932), a tenant, without the knowledge of the landlord, kept alcohol on the premises, which apparently led to a fire. In addition to referring to a Prohibited Articles Warranty, the court referred to the "increase of hazard" clause, stating (p 116):

> "[The clause] is not violated unless there is increase of hazard within the knowledge AND control of the insured."

The Bachmann case was cited in American Manufacturers Mut. Ins. Co. v. Wilson-Keith & Co., 247 F2d 249 (8th Cir, 1957), where the court said (p 261):

> "The insured was not in violation unless the increase of hazard was by means within its control AND knowledge."

In Goldman v. Piedmont Fire Ins. Co., 198 F2d 712 (1952), involving an accidental collapse of a building, the court said (p 715):

> "But we think that an increased hazard not brought about by the insured is also within the scope of the clause to the extent that the insured

190

knows of the increased hazard AND is in a position to abate it but fails to do so. . . .

". . . it must appear that he [insured] had knowledge of it and that the means of abating it were within his control."

See, also, Commercial Union Fire Ins. Co. v. Capouano, 55 Ga App 566, 190 SE 815 (1937), where the court said (p 815):

"The expression 'control or knowledge,' as used in the policy, is synonymous with 'control and knowledge.' "

The court reasoned that a person cannot control without having knowledge, but it was reasonable to have circumstances in which a risk is increased with the insured's knowledge but which might be outside his power to control.

■ We conclude, in view of the above authorities, that knowledge AND control of the increase in hazard must be shown before the clause can be used to avoid liability.

■ We next consider defendants' contentions that the insured has wilfully concealed or misrepresented a material fact or circumstance concerning the insurance, i. e., the condemnation proceedings and the alleged aftermath, and that this alleged violation of the policy was a matter for jury consideration. Defendants cite Westchester Fire Ins. Co. v. Fitzpatrick, 2 F2d 651 (1924), as authority for the point that condemnation proceedings can constitute an increase in hazard, and that a jury should be so instructed. We do not find this case controlling. While we do not hold that condemnation proceedings may not be a factor in the increase of hazard, absent any questionnaire on the point, plaintiffs' failure to inform the defend-

191

ants of pending condemnation proceedings cannot be construed to be such "concealment" or "fraud" as to void the instant policies.

It would be unreasonable to put the burden upon the insured to anticipate that the condemnation proceedings and the results thereof are material circumstances which require an insured to take affirmative action in informing the insurer. Condemnation proceedings are matters of public knowledge, and in this era of urban renewal, entire neighborhoods are being condemned. We find here there was no genuine issue of fact as to either concealment or fraud.

Finally, defendants contend that it was erroneous for the trial court to include interest on plaintiffs' loss "from the date of the filing of the answer of the defendants in this cause, July 25, 1959, to the date hereof . . . ." The instant policies contain no provision as to the inclusion of interest on a loss. The policy provides that the amount of loss "shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided."

■ We believe the instant insurance policies, as written instruments, come within the provisions of the Illinois statute on interest (Ill Rev Stats 1963, c 74, § 2), which provides:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; . . . and on money withheld by an unreasonable and vexatious delay of payment."

Therefore, the only question here is from what date interest should be allowed. A statement on this point

in 22 ILP, Insurance, § 578, indicates that the time from which interest is computed largely depends on the terms of the policy and the circumstances of the particular case. Interest may be allowed from the date of the loss, or after the lapse of a reasonable time for paying the amount due, or the date the insurance was payable, or the time that payment was refused after the amount became due.

The record shows that the fire occurred June 27, 1958. Proofs of loss were furnished on August 14, 1958; amended proofs of loss were furnished on August 29, 1958. The stipulation dated February 27, 1963, shows that on or about August 14, 1958, plaintiffs and defendants entered into an agreement entitled "Non-Waiver Agreement," and thereafter, on September 15, 1958, the public adjusters representing the plaintiffs and the adjusters representing the defendants "orally agreed that the amount of loss and damage which occurred June 27, 1958, . . . was $22,327.-78." The stipulation further recites that the oral agreement as to loss and damage was not reduced to writing at any time, and "the amount of loss and damage in any judgment entered in the above-entitled cause for plaintiffs and against said defendants shall be $22,327.78."

The "Non-Waiver Agreement" included in the stipulation of February 27, 1963, provides that any action taken by defendants "in ascertaining the amount of loss and damage . . . shall not waive or invalidate any of the conditions of the policies . . . ," and that no representative of defendants signing the agreement "has power or authority to waive any of the conditions of their respective policies, unless such waiver be specifically made in writing."

Cases cited by plaintiffs are not directly in point because they do not contain policy provisions similar to those presented here. Defendants assert that the

policy provisions should be strictly applied, and that "not until February 27, 1963, when the insureds and the insurers, by written stipulation, agreed on the amount of physical damage, was there a complete 'ascertainment of the loss' satisfying the policy condition." They point out that the oral agreement of August 14, 1958, was never reduced to writing, and the "Non-Waiver Agreement" was "an unmistakable warning" to plaintiffs that they, as insureds, had to fulfill every condition of the policy on their part to be performed, specifically that the amount of the loss "shall be payable sixty days after . . . ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided." As to this point, plaintiffs assert a waiver was "established by the defendants' acceptance of the validity of the amount of the award." Plaintiffs also assert "that a denial of liability operates as a waiver of all defenses based upon subsequent inattention to policy provisions."

 The trial court, apparently, in ruling that the date of the answer is the pertinent date, considered the denial of liability appearing in the answer to be a waiver of the policy provision in question. As is stated in 22 ILP, § 433, provisions of the policy as to proof of loss may be waived by the insurer by means of conduct which would lead the insured to believe the company did not intend to require compliance with the terms of the policy as to the furnishing of proof and ascertainment of loss. "An insurer's denial of liability for a loss, based on grounds other than the failure of the insured to furnish due notice and proof of loss, ordinarily constitutes a waiver or estoppel on the part of the insurer to insist on a compliance with the policy requirements respecting proof of loss."

■ We conclude, after reviewing the record, the policy provisions, and the circumstances surrounding the dealings of the parties, that there was a waiver of the policy requirement that the ascertainment of loss agreement be "expressed in writing." Both sides have cited numerous authorities, and a discussion of them would unduly extend this opinion.

The February 27, 1963, "Stipulation as to Amount of Loss" affirmatively shows that on September 15, 1958, "the public adjusters representing the plaintiffs and the adjusters representing said defendants . . . orally agreed that the amount of loss and damage . . . was $22,327.78." While it is true the parties had previously, on August 14, 1958, entered a "Non-Waiver Agreement," we believe the September 15, 1958, oral agreement was conduct calculated to lead the plaintiffs to believe that the defendants did not intend to require compliance with the terms of the policy with respect to reducing such agreement to writing at that time. From the circumstances of this case, the oral agreement of September 15, 1958, as to plaintiffs' loss, subsequently acknowledged and confirmed by the written stipulation of February 27, 1963, constituted a waiver by defendants that the agreement of September 15, 1958, be "expressed in writing." (American Nat. Bank & Trust Co. of Chicago v. Reserve Ins. Co., 38 Ill App2d 315, 320, 187 NE2d 343 (1962); Jay-Bee Realty Corp. v. Agricultural Ins. Co., 320 Ill App 310, 330, 50 NE2d 973 (1943).) We are not persuaded that plaintiffs abandoned, repudiated and negated the oral agreement by subsequently suing for an amount in excess of the oral agreement amount. Therefore, we conclude that interest on plaintiffs' loss should commence sixty days after September 15, 1958.

For the reasons given, the summary judgment of July 16, 1962, as to liability, is affirmed. The final

summary judgment of May 20, 1963, is affirmed in all respects except as to date of commencement of interest on the amount of the loss. The cause is remanded with directions to compute interest on the loss commencing sixty days after September 15, 1958.

Affirmed except as to damages and remanded with directions to enter damages in accordance with the views expressed herein.

BURMAN and KLUCZYNSKI, JJ., concur.