**ADAMS MACHINE & TOOL COM-
PANY, INC., Plaintiff-Appellee,**

v.

**MFB MUTUAL INSURANCE COM-
PANY, Defendant-Appellant.**

No. 72–1322.

United States Court of Appeals,
Fifth Circuit.

May 25, 1973.

Rehearing and Rehearing En Banc
Denied Aug. 13, 1973.

Gewin, Circuit Judge, who would affirm, filed opinion concurring in part and dissenting in part.

Sam F. Lowe, Jr., Atlanta, Ga., Oscar M. Smith, Rome, Ga., for defendant-appellant.

John K. Morgan, Chattanooga, Tenn., Bobby Lee Cook, A. Cecil Palmour, Summerville, Ga., for plaintiff-appellee.

Before GEWIN, BELL and GODBOLD, Circuit Judges.

BELL, Circuit Judge:

This appeal arises out of a fire loss. The defenses were arson, increase of hazard, and fraud in the examination under oath. The jury returned a verdict for the plaintiff-insured in the amount of $1,038,945.00. Thereafter, the defendant-insurer (MFB), produced a witness who claimed that he participated with the president of plaintiff corporation in the alleged arson. A motion for new trial was granted as to liability only, the new trial ensued, and the verdict was again for plaintiff. This appeal followed. We find no merit in the assignments of error having to do with damages. We reverse for a new trial on liability only.

There was substantial evidence pointing to a fire which was incendiary in origin. The fire occurred in the early morning hours of May 27, 1969. Plaintiff corporation was engaged in the business of manufacturing metal parts of various types. The company had been successful but had run upon hard times by the time of the fire due principally to the cancellation of a large contract in contemplation of which expensive machinery had been purchased and installed.

The assignments of error go to liability as well as to damages. We will first dispose of the assignments of error which are without merit and as to which no discussion is warranted. The first of these is that the damage occurred because of arson caused or procured by Adams, the president of plaintiff company who owned 50 per cent of the corporate stock. (His wife owned the other 50 per cent of the corporate stock.) The argument is that the insurer carried the "heavy burden" referred to in Hanover Fire Insurance Co. of New York v. Argo, 5 Cir., 1958, 251 F.2d 80, and was therefore entitled to a directed verdict of no liability. It is clear to us that the evidence was disputed both as to the fire having been caused by arson, and also as to it having been procured by Adams. The dispute in each instance was of such substance as to warrant the submission of the question presented to the jury. The district court did not err in submitting the questions to the jury.

MFB also contends that plaintiff, through its officer Adams, committed fraud in the examinations under oath provision of the two fire insurance policies in question to the extent of voiding the policies. We have carefully examined this contention and its factual underpinnings. Our conclusion is that this issue was also due to be submitted to the jury. It was submitted and there was no error in doing so.

From the standpoint of liability this leaves for discussion two contentions which arise under the defense that the hazard was increased by means within the control or knowledge of plaintiff. These contentions have their genesis in the fact that the automatic sprinkler system was inexplicably turned off at the time of the fire.

It was possible to cut off the sprinkler system by closing a post indicator valve but it took 26 complete turns of a large metal handle to do so. The valve was on the outside of the building, adjacent to a street, and exposed to the public. On the Saturday before the fire on Tuesday, employees of plaintiff corporation found the valve in a closed position for the first time since the installation of the sprinkler system in 1965. Mr. Adams directed that the valve be opened, and he then put a padlock through a hasp so as to lock the handle in place. The padlock could be opened only by one key which Mr. Adams placed in a metal box located at a point about 60 feet from the valve, also on the outside of the building. He placed a paper tag on the key bearing the legend "Motorcycle Trailer." He told only employees Andrews, Gordon, Smith, and Oliver of the location of the key. At the time of the fire, the fireman found the post indicator value in a closed position. The lock was in the hasp but unlocked. The key with tag attached was in the open lock. Employee Andrews saw the post indicator valve in an open position with the padlock in place on the Monday before the fire which occurred in the early hours of Tuesday.

The two policies of insurance in question provide that they are suspended: "(a) while the hazard is increased by any means within the knowledge or control of the insured; . . .".

■ One of these two assignments of error is based on the charge as it related to this provision. This error, as we perceive it, has two prongs. The focus of one lies in the instruction by the district court to the jury that the language of this increase in hazard clause, "by any means within the knowledge or control of the insured", was to be construed as "means within the knowledge and control of the insured". In so charging, the court apparently relied on the Georgia

decision of Commercial Union Fire Insurance Co. v. Capouano, 55 Ga.App. 566, 190 S.E. 815 (1937), aff'd, 185 Ga. 303, 194 S.E. 521 (1937). In that case the Georgia Court of Appeals construed "or" as being synonymous with "and" in the context used on the reasoning that it could not be said that "a person had control of a thing of which he had no knowledge." See also DiLeo v. United States Fidelity & Guaranty Co., 50 Ill. App.2d 183, 200 N.E.2d 405, 9 A.L.R.3d 1399, 1407 (1964). Assuming error in the conversion of "or" to "and" arguendo only, the short of the matter is that there was no objection to this charge as such.

■ The other prong is the position of MFB that it was entitled to a charge that a presumption arose that plaintiff had knowledge that the sprinkler system was off and was required to rebut the presumption by showing that it was off by some means which was not within either the knowledge or control of plaintiff. We think this charge was correctly refused. The theory of MFB is that plaintiff had such control over the valve as to give rise to the presumption. The answer to this contention is that, given the evidence, the jury could have found that plaintiff's control over the valve was not exclusive. This answer is aside from the point whether there is any validity in the first place to the theory of such a presumption, a proposition which is asserted but not supported by authority.[1]

The other assignment of error under the increase in hazard defense rests on the contention that the court submitted as an issue, over objection, whether the sprinkler system was in fact cut off at the time of the fire. The insurer's argument is that this was an undisputed issue and that it was prejudicial to permit and direct the jury to decide an issue not in dispute. The vice of this error will be seen in the form of the inter-

---

1. The policies in question do not contain so-called "sprinkler" or "due diligence in maintaining fire equipment" clauses.

rogatory which was submitted to the jury:

"At the time of the fire on May 27, 1969, was the automatic sprinkler system cut off by a means within the control or knowledge of the insured?"

The jury was instructed to answer this question yes or no but it turned out that the question came in two parts. The court instructed the jury to first determine whether the sprinkler system was in fact cut off. Second, if off, the jury would go further and determine whether it was cut off by a means within the control or knowledge of the insured. The answer of the jury to the interrogatory was "no", and this, in effect, was "no" to both questions.

■■ The problem is that the evidence demanded a finding that the sprinkler system was cut off. Counsel for plaintiff announced in his opening statement: "We expect to show you that the sprinkler system was in fact turned off, and we don't make any dispute about it . . .". The trial judge was at pains to avoid error with respect to submitting this issue to the jury if, in fact, it was not an issue. In this connection, at the close of the evidence, the court inquired of plaintiff's counsel as to whether counsel conceded that the sprinkler system was turned off at the time of the fire. The court alluded to the fact that at the first trial, counsel for MFB objected to the court having submitted this question as an issue to the jury. Counsel agreed to discuss the matter with co-counsel and report back to the court. The court reopened the inquiry shortly before charging the jury. Counsel for plaintiff then stated in something of a non sequitur, that ". . . we admit it as a matter of fact but not as a matter of law." The court dropped the matter with the statement that there was some testimony from Mr. Wilde (the admitted arsonist), that the sprinkler system was on. After the charge and at the point where objections to the charge were being made, and after an objection had been filed to the submission of this issue to the jury, the court reiterated that Mr. Wilde testified that the sprinkler was on when the fire was set.

We have carefully considered the testimony of Mr. Wilde. His testimony at one point was that when he set the fire the sprinkler was on. He testified that he was assuming that the sprinkler system was on. He also testified that he, Adams and Newberry (Adams' brother-in-law), did not turn the sprinkler system off. At another point he quoted Adams as saying that the fire would be so hot that there would be no need to turn the sprinkler off. However, he then testified that Adams told him, three days after the fire, that the first fire did not catch and that it was necessary for him (Adams) to return and start the fire over and that he (Adams) then turned the sprinkler system off.

The sum of Wilde's testimony does not rise to the level of evidence which creates a dispute as to the sprinkler system being on. There was no basis for submission of the issue to the jury and it was thus error to submit this issue to the jury. See Boeing Co. v. Shipman, 5 Cir., 1969, 411 F.2d 365, 374, for the applicable standard.

We go further and consider whether the error was harmless. Absent the interrogatory, it is doubtful that the jury would have found under the evidence that the sprinkler system was turned on at the time of the fire. It can be argued that the jury simply was answering that the sprinkler system was not turned off by means within the knowledge and control of Adams rather than that it was not turned off at all. The answer to these arguments would seem to be that MFB would be entitled to a new trial had the jury found that the sprinkler system was not turned off. The result is the same under the form of the interrogatory and the answer thereto. Under the charge the jury was required to first determine whether the sprinkler was off. The import of the answer was that it was not cut off. Under these circum-

stances we cannot say that the error was harmless. The case must be tried anew as to liability.

On the question of damages, there are no assignments of error as to the sum of $337,886.00 which was awarded for building and fixtures, inventory, and business interruption. (One of the two insurance policies in suit covered business interruption damages). The claimed error goes to the award attributable to machinery damage.

■ On this question, plaintiffs offered a witness, Mr. Tollefsrud of the American Appraisal Company, on the value of the machines which were damaged or destroyed in the fire. The measure of damages was the lesser of the actual cash value or the cost of repairing the machines. The witness had appraised the machines in January of 1968 as having an actual cash value of $314,466.96. For the purposes of the trial, he valued them as having an actual cash value of $812,455.00 at the time of the fire. It developed on cross-examination that the increased value came from two factors. The first was an actual increase in value due to an increase in the market price of used machinery of the types involved. He then added a second factor which appears to have been as high as forty per cent. He described this factor as being "fair market value for insurance settlement." His idea was that the market price of machinery would be perforce increased because of plaintiff's need for such an unusual number of used machines.

This method of valuing the machinery seems to exceed the measure of damages which obtained under the insurance policy and the charge of the court to the jury. That definition of actual cash value is as follows:

". . . the fair or reasonable cash price for which the property could be bought or sold in the market in its condition at the time; . . . that is, the fair or reasonable cash price for which the property could be bought or sold in the market in the ordinary course of business, but not at a forced sale. . . ."

Once this method of evaluation surfaced during cross-examination, counsel for MFB made no motion to strike the testimony nor was the court requested to give a limiting or cautionary instruction with respect to the testimony. Counsel relied instead on a previously made and continuing objection as to any testimony that exceeded the actual cash value of the machines.

■ Assuming a valid objection to this evidence, it was error not to exclude it. However, the question remains whether this error was harmless. There was an abundance of testimony as to the value of the machines. Neither party to this appeal has favored us with a complete summation of the range of the testimony, but on motion for new trial as to damages, the district court concluded that the verdict with respect to the machines was well within the range of the evidence submitted. As an example, it was pointed out that the insurer's witness valued the tools and dies located in the "tool crib" at substantially more than had plaintiff's witnesses and that this was a part of the damages allowed for the machines. This difference was some $158,000.00. We note that there was evidence allowed as to the cost of new machines, the cost of rebuilding the old machines as new, and also the cost of repairs. Moreover, there was evidence showing the cost to Adams of the machine and this figure was quite low. In each instance the evidence was for such weight as the jury might wish to give it in arriving at actual cash value under the standard given in charge. Cf. D. H. Overmyer Warehouse Co. v. Kuniansky, 5 Cir., 1970, 419 F.2d 1280, on the propriety of the fact finder assessing damages within the range of the testimony. In our view the error in admitting the valuations of Tollefsrud was harmless.

Reversed and remanded for further proceedings not inconsistent herewith.

GEWIN, Circuit Judge (concurring in part and dissenting in part):

In my view the majority has correctly decided that there is no merit in the specifications of error having to do with damages, and therefore, I concur in that portion of the opinion. With full respect for the views expressed by my Brothers of the majority I am in complete disagreement with the conclusion that there should be a new trial as to the issue of liability. In my considered judgment the majority has applied an incorrect standard of review and has abridged the seventh amendment right to trial by jury to which the plaintiff-appellee (Adams) is entitled under the facts of this case.

Against the stubborn and aggressive contentions of MFB Mutual Insurance Company (MFB) two juries have decided that Mr. Adams was not guilty of arson and that he did nothing to increase the hazard or chance of loss by fire. The evidence was developed in a lengthy trial by skillful and effective trial counsel for both parties. There were numerous witnesses and a large volume of exhibits. The evidence was in total conflict and presents a typical situation which requires a factual resolution of claims based on conflicting evidence.

The appropriate standard of review has recently been set forth clearly and unequivocally by this court in Griffin v. Matherne, 471 F.2d 911 (5th Cir. 1973) and reaffirmed in Colvin v. Dempsey-Tegeler & Co., 477 F.2d 1283 (5th Cir. 1973). We quote from the opinion in Griffin v. Matherne:

The Seventh Amendment requires that if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly. Atlantic & Gulf Stevedores v. Ellerman Lines, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 806–807 (1962). This court has stated that the test to be applied in reconciling apparent conflicts between the jury's answers is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict. R. B. Company v. Aetna Insurance Company, 299 F.2d 753, 760 (5th Cir. 1962). If on review of the district court's judgment we find that there is no view of the case which makes the jury's answers consistent and that the inconsistency is such that the special verdict will support neither the judgment entered below nor any other judgment, then the judgment must be reversed and the cause remanded for trial anew. Missouri Pacific Ry. Co. v. Salazar, 254 F.2d 847, 849 (5th Cir. 1958); Wright v. Kroeger Corporation, 422 F.2d 176, 178–179 (5th Cir. 1970).

471 F.2d at 915.

The interrogatory quoted in the opinion was the first one submitted to the jury. The necessity for that interrogatory arose from the defense vigorously asserted by MFB that Mr. Adams had increased the hazard or chance of loss by fire. It was asserted that he did so by deliberately cutting off the automatic sprinkler system. That issue occupied much of the trial time and evidence relating to it extended over numerous pages of the record. Moreover, the trial judge, thoroughly understood the issue and fully explained it with remarkable clarity in his instructions to the jury. Indeed, in my view, his instructions were very favorable to the defense asserted by MFB. We quote from the court's instructions with reference to the interrogatory in question:

Now, the word 'means,' as used in this provision of the policy refers to a situation or a condition which increases the hazard or chance of loss by fire, here claimed to be the fact that the post indicator valve was closed or shut, preventing water from flowing into the sprinkler system.

Now, if you should determine that the sprinkler system was cut off at the time of the fire, then the Court instructs you that such condition would be a means which would increase the hazard or chance of loss by fire. However, the question is not just whether the valve was on or off, but it must be shown whether if off, such means were within the control or knowledge of the insured.

As used in this policy, the words 'control or knowledge' means the same thing as control 'and' knowledge. The idea of control assumes the existence of knowledge and the power to do something about it. Thus, a person cannot control a situation or condition if he has no knowledge of it, and as used here, the word 'knowledge' means actual knowledge brought directly to a person's senses.

Thus, it is not enough for it to be shown that the valve was located on the plaintiff's property and subject to the plaintiff's regulation and closed at the time of the fire or even to show, in addition, that the plaintiff should have known whether it was closed or not. You must find by the evidence that the valve was closed and that the plaintiff actually knew it was closed.

Now, knowledge may not ordinarily be proven directly, that is by direct evidence, because it is seldom possible to have direct evidence of the operation or what is in somebody's mind. But, you may infer the presence or absence of knowledge from the circumstances surrounding a particular event or transaction. Thus, you may consider any acts done or omitted and any statement made or omitted and all other facts and circumstances which indicate a person's state of mind at a certain time.

Now, if you find from a consideration of all the evidence that you have heard in this case that Mr. Kenneth A. Adams or someone acting under the direction or with the knowledge of Mr. or Mrs. Kenneth Adams turned off the automatic sprinkler system so that it was off at the time of the fire, then you should answer number one, yes.

Now, you should examine all the facts and circumstances as revealed to you by the evidence and if you believe by a preponderance of the evidence that the valve was closed at the time of the fire and that such condition was one within the control and knowledge of the plaintiffs as explained to you, then you should answer number one, yes. Otherwise, your answer should be no, and you should then proceed to the next question.

Following the standard set forth in Griffin v. Matherne, it is obvious to me that "there is a view of the case which makes the jury's answers consistent" and in obedience to that standard this court should "adopt that view and enter judgment accordingly." Simply stated the jury has unequivocally found that at the time of the fire the automatic sprinkler system *was not cut off by a means within the control or knowledge of the insured.*

The majority insists that the jury's negative response to interrogatory number one is ambiguous. I would be inclined to agree if the interrogatory was to be analyzed in the abstract. But that is not the proper approach. A reviewing court must pass on questions such as this one in a far broader context and when that is done here the possibility of any ambiguity in the jury's answer to this interrogatory is extremely remote. At the trial, neither side contested the fact that the sprinkler system was turned off by someone prior to the fire. The evidence presented was directed mainly toward establishing responsibility for that act. In charging the jury, the trial judge placed great emphasis upon this point. In light of these factors, I have no difficulty in assessing the jury's answer to interrogatory number one. To suggest that it could mean that the sprinkler system was found to be inoperative at the time of the fire is simply to ignore what went on at the

**446**

trial. There may be some logical consistency in the majority's opinion but unfortunately there is too little common sense.

In addition it is of some importance to mention the fact that much of the confusion on this issue was created by the testimony of Mr. Wilde, a defense witness presented by MFB. His testimony was confusing, contradictory and rather bizarre. Evidently the jury rejected it, and to my mind, the reasons are obvious. Again I must say, that the insured was not to blame according to the jury's answer, even if the system was turned off. Adams' recovery is not dependent upon that fact. Rather the right of recovery is dependent upon whether, if the system was cut off, it was cut off "by a means within the control or knowledge of the insured."

It is a serious matter to overturn a jury verdict after two different juries have decided a specific and vital issue in favor of a plaintiff and thereby deprive the plaintiff of a judgment in excess of one million dollars.

I would affirm the judgment.

Coleman, Circuit Judge, dissented with opinion.