Edward **HENLEY**, Plaintiff–Appellee,

v.

**TENNESSEE FARMERS MUTUAL INSURANCE COMPANY,**
Defendant–Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

March 31, 1988.

Permission to Appeal Denied by
Supreme Court June 27, 1988.

Harold Fisher, Garland & Fisher, Manchester, for plaintiff-appellee.

Arthur E. McClellan, McClellan, Powers & Ehmling, P.C., Gallatin, for defendant-appellant.

## OPINION

TODD, Presiding Judge.

The defendant, Tennessee Farmers Mutual Insurance (insurer) has appealed from a non-jury judgment in favor of the plaintiff, Ed Henley (insured) in the amount of $20,000, the face amount of a fire insurance policy on a dwelling, plus $5,000 bad faith penalty and interest from September 5, 1985.

Defendant presents three issues for review, of which the first is as follows:

Whether the Trial Court erred in holding that the fire loss was covered under the insured's policy.

On October 8, 1984, insurer issued to insured a one year fire insurance policy containing the following:

### SCHEDULE OF ITEMS FARM PROPERTY

#### (Buildings and Structures)

This policy covers the following described property, owned by the Insured and occupied by XXXXXXXXXXXXXXXX and (except as herein otherwise provided) situated on and confined to 210 acres in the 10th of Section _____ Township _____ Range _____ about 10 miles N from Manchester, County of Coffee State of Tennessee on Fountain Grove Road.

The coverage under items below shall apply as further described and limited in the Farm Property Form.

| ITEM NO. | LIMIT OF LIABILITY | SCHEDULE | TYPE |
|---|---|---|---|
| .... | | | |
| 2. | $20000.00 on | FRAME 26 × 45 Dwelling No. 3 | I |
| .... | | | |

The portion of the 210 acre tract on which the insured house was located was a 48 acre tract purchased on June 11, 1977, by Edward Henley and wife, Vivian Henley from Clyde Talley and wife, Carletta Talley.

On June 20, 1977, Edward Henley and wife, Vivian Henley, conveyed to the State of Tennessee a 3.722 acre tract out of the 48 acre tract. The boundary of the 3.722 acre tract ran through the subject house, so that part of the house rested on the tract conveyed to the State and part of the house rested on land retained by Mr. and Mrs. Henley.

On the same date, June 20, 1985, Jesse A. Crooker, R.O.W., Agent of the Tennessee Department of Transportation and Mr. and Mrs. Henley executed a document entitled:

Agreement by the Owner of Improvement(s) Located on Property Acquired by the State to Remove Such from the Right of Way.

Said Document recites:

To: Edward Henley and wife Vivian Henley 1222 Hillcrest Drive, Manchester, Tennessee 37355.

Under separate deed ... the net amount of $27,250.00 is being paid to you by the State of Tennessee for acquisition of the tract on the project set forth above.

The amount being paid to you is based on the understanding ... that the seller will retain and remove certain improvements from the right of way, at your own expense ... the following ... one story frame dwelling.

#### Terms and Conditions

1. The amount being paid the seller has been arrived at by considering that the net salvage value of the improvement being retained and removed has been approved at $300.00.

. . . .

6. Improvement must be vacated and removed by August 20, 1985.

#### Acceptance of Terms and Conditions

I (or we) accept the terms and conditions stated above and agree to remove the above described improvement(s) under said terms and conditions.

Date: _____

Seller(s) /s/ Edward Henley
/s/ Vivian Henley

On or about August 2, 1985, a housemover under contract with Mr. and Mrs. Henley moved the subject house about 50 feet to a position off of the 3.722 acre tract sold to the State and entirely on the remainder of the 48 acre tract which Mr. and Mrs. Henley continued to own. A concrete footing had been poured and a concrete block foundation had been laid at the new location, but the house had not been lowered onto the foundation. All utilities had been disconnected before moving, and none had been reconnected.

On August 4, 1985, the house was destroyed by fire which was duly reported to the insurer with proper proof of loss.

At no time prior to the report of the fire was the insurer informed of the plans for removal or the removal of the house from its former location to the new location.

Defendant argues under its first issue that it is not liable because of the provision of its policy that it insures against loss by fire:

> to the property herein while located or contained as described in this policy ... and not elsewhere.

*Reed v. Tennessee Farmers Mutual Insurance Co.,* Tenn.App.1972, 483 S.W.2d 721, involved a policy containing the above quoted language, but the insured property was a mobile home; the insured was the holder of a purchase money lien on the home; and it was moved from Braden, Tennessee to a location in Shelby County, Tennessee where it was destroyed by fire. Upon suit being brought for the loss, the insurer defended on the ground that the insured did not own the home and that the removal of the home from Braden to Shelby County increased the risk of loss. The policy excluded losses occurring:

> (a) While the hazard is increased by any means within the control or knowledge of the insured.

This Court held that the holder of the lien for purchase price by retaining title had preserved an insurable interest; that the insurer had the burden of proving an increase in risk; and that there was no evidence of increased risk. In discussing the provision "while located or contained as described in this policy and not elsewhere", this Court said:

> ... If we were dealing with the ordinary situation where the building insured is, in law, part of the real estate, perhaps no problem would be presented. However, we are not. The company was aware of the fact it was insuring a mobile home for it is so noted on the face of the policy. In that light, the term "at location of property involved" is not restrictive. It could mean anywhere it is located....

It is seen that this opinion contains dicta to the effect that removal of an ordinary dwelling from the location stated in the policy might void the coverage of the dwelling. In the cited opinion, the removed dwelling was a mobile home which might have been expected to be removed. However, it appears that the removal was to a location other than that listed in the policy.

■ In the present case, there was a permanent dwelling which would not ordinarily be expected to be moved; but the removal was for a distance of only 50 feet and within the same 48 acre portion of the 210 acre farm described in the policy. Thus, while the present house was moved to a different location, it was not moved to a location not described in the policy. The new location of the house was within the area described in the policy.

In *North Carolina Blue Cross and Blue Shield, Inc. v. American Manufacturers Mutual Insurance Company,* 1975, 25 N.C.App. 578, 214 S.E.2d 252, the policy insured a house "situated Lot No. 1, Cedar Terrace Annex, ss of Lakeview Drive, Route 7, Durham N.C. (Christopher Property)."

The house was moved 600 feet to a tract known as "lot Numbers 6 and 7 of the Cedar Terrace Annex Subdivision, on East Lakeview Drive and located on the west side of the street."

The appellate court affirmed a summary judgment for the defendant on the ground that the policy did not cover the building at its location at the time of the loss by fire.

In the present case, after its move the house remained within the bounds of the land described in the policy as the location of the house.

■ The insurer next insists that the coverage was terminated by the sale of the property to the State of Tennessee. This Court does not interpret the two documents quoted above as transferring title to the dwelling from insured and his wife to the State. The deed evidenced a transfer of land upon which part but not all of the house rested. Ordinarily, a deed to real estate conveys all improvements *thereon.* Therefore, absent the separate agreement, the deed would have conveyed only that

portion of the dwelling which rested upon the property being conveyed, and the remainder of the dwelling which continued to rest upon unconveyed property would have continued to be the property of insured and wife. However, the simultaneous agreement regarding the dwelling represented an exclusion or reservation of the entire dwelling which remained the property of insured and his wife, regardless of where located.

■ Next, insurer relies upon the fact that insured never notified insurer of his intention to sell, of the sale, or of the moving of the dwelling.

The policy contains a provision that it will be void if the insured:

> willfully concealed or misrepresented any material fact or circumstances concerning this insurance, or the interest of the insured therein.

This raises the question of whether the intention to sell or the sale of land partly underlying a house, or the moving of a house to a nearby spot on land described in the policy is such a material fact or circumstance concerning the insurance or the interest of the insured therein as that its concealment would void the policy. In the view of this Court, such a fact might be so material, but it would not be presumed to be such. That is, its materiality must be proven.

This raises the question of whether there is any evidence in this record which would so indicate, and whether the entire evidence preponderates to this effect. This question will be discussed hereafter under the subject of "increasing the risk", for the concealment of a fact that would increase the risk would be a concealment of a material fact, whereas a concealment of fact that would not increase the risk would not be a concealment of a material fact.

In *Di Leo v. United States Fidelity and Guaranty Co.*, 50 Ill.App.2d 183, 200 N.E. 2d 405 (1964) the insured failed to notify the insured of a pending condemnation suit. The Illinois Court held that such failure to notify did not void the policy. In the present case, however, the transfer of land title had already taken place when the loss occurred.

In *Pappas v. Insurance Company of the State of Pennsylvania*, 1965, 54 Tenn.App. 633, 393 S.W.2d 298, the insured conveyed the insured property to his minor son without giving notice to the insurer. This Court affirmed the denial of coverage because the insured no longer had any interest in the building at the time it burned. In the present case, the insured retained his interest in the building to the time of its loss.

Insurer next relies upon the provision of the policy relieving the insured from liability for any loss occurring "while the hazard is increased by any means within the control or knowledge of the insured".

Alden Evans, an experienced insurance agent presented by insured testified that disconnection of utilities would generally decrease the risk of loss; but, on cross examination, he testified that leaving the house unoccupied would increase the risk of loss by lack of responsible supervision and risk of intruders or vandals. However, he also testified that in his experience, no insurance company had denied liability, changed a premium or cancelled a policy because of moving a house a short distance without notifying the insurer.

Thomas Martin, property underwriter for the insurer, testified that the subject dwelling was a "Tenant Occupied Type I", which is charged the lowest premium for rental property; that the full description of such a type house is as follows:

A. ... "Tenant occupied dwelling must be insured for at least twenty thousand ($20,000.00); must be of superior quality; in excellent repair; cannot be vacant or unoccupied; a modern heating system consisting of one (1) of the following: central heat; heating plant; permanent modern heating system; rigid pipe, permanently installed; permanently installed 220 underwriters laboratory labeled electric heater; continuous masonry foundation; modern interior plumbing system; modern electrical system in good condition."

Mr. Martin testified that, if the insurer had been notified of the transaction with the State, the following would have occurred:

A. Our agent would have contacted Mr. Henley and investigated exactly what had transpired with the State; what his intent was for the property, and, in this example, Mr. Henley would have told them that it was going to be moved. The agent would have informed him that it would not be covered while it was being moved ...

. . . .

A. The actual cash value of the property would have been set at three hundred dollars ($300.00). Our agent would have changed the form and the type in which this property was classified. It would have gone to a Type III, and this would only have been done after the structure was attached to the new foundation.

Q. What is the distinction between a Type III dwelling and a Type I dwelling? What is the distinction?

A. Well, a Type III dwelling would be that that does not qualify for I or II. It can be vacant and unoccupied property, and, as I said, all dwellings not eligible for Type I or II. The type of policy that the agent would have placed on this property after it had been moved would have been an actual cash value policy.

. . . .

A. ... This property would have been placed on the actual cash value endorsement; the agent would have determined with Mr. Henley what types of remodeling he was going to do and at what value they had guesstimate the dwelling to be at that—at the completion of the remodeling. We would have used the Type III rate, and, since the property would be vacant until Mr. Henley had completed the remodeling, we would have added a vacancy charge of twenty-four percent (24%). At the time that that was all completed, then, we would have taken it back to the pre-existing form, when it would qualify, again.

The same witness also testified:

A. As Mr. Evans so completely explained, the property is unoccupied; it has no one there to preserve or to prevent any type of loss; any trespassers from coming upon the property and do what they wish. In the event of a loss, there is no one, then, to lessen that loss, such as a fire loss—anyone to try to put out a fire.

Q. If the hazard is increased with the knowledge and control of the insured, what happens to the coverage?

A. That is stated in the—it would be the second page, Line 28. "Conditions suspending and restricting insurance unless otherwise provided in writing added hereunto, this Company shall not be liable for a loss occurring while the hazard is increased by any means within the control or knowledge of the insured."

Q. Alright. And, as the plaintiff's witness has testified, and it is your opinion that, when property is vacant, the hazard is increased?

A. Yes, sir.

. . . .

Q. Alright. Now, what would have happened if he had told us that he intended to move his dwelling from the place where it was to someplace else?

A. Then, we would have instructed him that we would have not insured that property until it was placed upon its permanent foundation, due to the—again, the increase in the risk while being moved—structural—possible structural damage that can increase a fire hazard when the electricity is turned back on; water damage when the plumbing is turned back on; when the sewage is turned back—or connected, again. It may not have been a perfectly smooth move, it would have jostled framing, which could have increased the hazard of this risk.

. . . .

Q. ... if there were no utilities connected, the risk of fire is not as great as otherwise. Is that correct?

A. With regards to those three (3) exposures, yes, sir.

Q. If the property is vacant, the risk for vandalism and arson—as is apparently

the situation in this case—is substantially increased. Is that correct?

A. Yes, sir.

The insurer next insists that the coverage was voided by the transformation of the dwelling from realty to personalty. It cannot be denied that the agreement to sever the title to the house from the title to the land and to contract for the removal of the house from the land effectively converted the house into personalty. The insurer points out that the policy contained a separate schedule for personalty. The schedule which listed the subject house is quoted above. The schedule does not use the word "real estate"; it is entitled, "Schedule of Items Farm Property (buildings and structures)". As quoted above, the schedule states that it covers "the following described property ... situated on and confined to 210 acres ... etc".

So long as the subject building was situated on and confined to the 210 acre farm, this Court can see no basis for denying liability because the building by agreement was temporarily rendered personalty. *Johnson v. Patterson*, 81 Tenn. (13 Lea) 626 (1884), cited by the insurer, is inapplicable, being a suit to determine the rights of the heirs of President Andrew Johnson.

In *Payne v. Eureka–Security Fire and Marine Insurance Company*, 173 Tenn. 659, 122 S.W.2d 431 (1938), the policy contained the following:

"This entire policy shall be void unless otherwise provided by agreement in writing added hereto (a) if interest of the assured be other than unconditional or sole ownership, of (b) if the subject of insurance be a building on ground not owned by the assured in fee simple."

The house was situated on land not owned by the insured. The Supreme Court held:

"... insurance companies habitually insure the contents of buildings, without insuring the building or inquiring about its ownership. Such insurance on the contents alone would involve no unusual hazard. It would not tempt the insured to permit his furniture or other movables to burn. But if it be coupled with insurance on a building which he does not own, and by the destruction of which he would profit, both the house and its contents are subjected to a risk which the insurer was not willing to assume, and one against the assumption of which he expressly contracted."

It is seen that the cited authority involved a policy provision not involved in the present case and a title situation which is not involved in the present case.

No authority has been cited or found which involves the precise fact situation of the present case. A number of authorities on the general subject of increasing hazard are found in 26 A.L.R.2d 809, 28 A.L.R.2d 757 34 A.L.R.2d 717, and 19 A.L.R.3rd 1336, but none involve the specifics of the present case. The cases generally are divided into three classes:

1. Those in which the courts find as a matter of law that the change did not result in increasing the hazard or that the increase was within the contemplation of the parties.

2. Those in which the change was held by the courts to be an increase of hazard as a matter of law.

3. Those in which the question of increase of hazard was a question of fact for the finder of fact.

This Court concludes that the present case falls within the third category in which the issue is resolved by a finding of fact. Thus, this Court is under a duty to find facts recognizing the presumption of the correctness of a non-jury judgment unless the evidence preponderates otherwise. T.R.A.P. Rule 13(d).

The house was insured as the least hazardous type of tenant occupied house. When the insured decided to have the house moved from one part of his farm to another part of his farm, the decision involved a number of alterations which affected the interests of the insurer.

1. It was necessary to evict the tenant and leave the house unoccupied until it was made tenantable in its new location.

2. It was necessary to disconnect all utilities (gas, water, electricity, telephone, etc.) and to reconnect the same in the new location.

3. It was necessary to repair any damage to the house occurring during the move and to pass such inspections for safety as were necessary before reconnection of utilities.

4. The insurer was entitled to the opportunity to reinspect the house in its new location and condition before reinstating the insurance thereon.

In short, the insured changed the house from an approved Type I tenant house to a "house under removal and renovation". In so doing, insured caused a substantial increase in hazard which triggered the exclusionary clause.

The very loss which did occur was directly associated with the unoccupied condition of the house. The cause of the fire was determined to be arson, which would have been highly unlikely if the house had been occupied in its original position.

This Court finds that the evidence preponderates against the judgment of the Trial Court in that the loss occurred while the hazard was increased by a means within the control of the insured, and there was a concealment of a material fact by failure to notify the insurer of the intended treatment and disposition of the house.

Some consolation may be found in the fact that, excepting the $300 salvage value, insured received the entire value of the house from the State of Tennessee; and his only other loss is the cost of moving the house. If he had reported his activities to the insurer, there would have been an additional premium charge for the high risk of removal and rehabilitation.

The result above stated precludes the necessity of discussing other issues relating to "valued policy" and "bad faith penalty".

The judgment of the Trial Court is reversed and vacated. Plaintiff's suit is dismissed. All costs of this suit including costs of this appeal, are taxed against the plaintiff. The cause is remanded for such further proceedings, if any, as may be necessary and proper.

Reversed, dismissed, remanded.

CANTRELL and KOCH, JJ., concur.